Filed 3/20/14  P. v. Tatum CA6

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SIXTH APPELLATE DISTRICT

| | |
|---|---|
| THE PEOPLE, | H039207 |
| Plaintiff and Respondent, | (Santa Clara County Super. Ct. No. 191396) |
| v. | |
| CHARLES L. TATUM, | |
| Defendant and Appellant. | |

Defendant Charles L. Tatum, a "Three Strikes" prisoner who is serving an indeterminate life sentence, appeals the trial court's orders denying his petition to recall his sentence pursuant to Penal Code section 1170.126.[1]  Before discussing defendant's contentions, we briefly describe section 1170.126 and the initiative measure that created it.

On November 6, 2012, the voters approved Proposition 36, the Three Strikes Reform Act of 2012 (hereafter Reform Act), which amended sections 667 and 1170.12 and added section 1170.126.  The Reform Act changes the requirements to sentence a third strike offender to 25 years to life in prison.  (*People v. Yearwood* (2013) 213 Cal.App.4th 161, 167 (*Yearwood*).)  Under the "Three Strikes" law as it existed prior to

---

[1]  Unless otherwise stated, all further statutory references are to the Penal Code.

the Reform Act (former §§ 667, subds. (b)-(i); 1170.12), a defendant who had previously been convicted of two or more serious or violent felonies was subject to an indeterminate sentence of 25 years to life upon his or her conviction of *any* new felony. The Reform Act changed the Three Strikes law by reserving indeterminate life sentences for cases where the new offense is also a *serious or violent felony*, unless the prosecution pleads and proves an enumerated disqualifying factor. In all other cases, a recidivist defendant will be sentenced as a second strike offender, rather than a third strike offender. (*Yearwood*, at pp. 167-168, citing §§ 667, 1170.12; *People v. Superior Court* (*Kaulick*) (2013) 215 Cal.App.4th 1279, 1286.)

The Reform Act also created a "post-conviction release proceeding" whereby a Three Strikes prisoner who is serving an "indeterminate life sentence" for a crime that was not a serious or violent felony—and who is not otherwise disqualified—may have his or her sentence recalled and be resentenced as a second strike offender, unless the court "determines that resentencing . . . would pose an unreasonable risk of danger to public safety." (§ 1170.126, subds. (a), (f), (m); *Yearwood*, *supra*, 213 Cal.App.4th at p. 168.)

In 1998, defendant pleaded guilty to one count of possession of cocaine for sale (Health & Saf. Code, § 11351) and one count of conspiracy to sell cocaine (§ 182, subd. (a)(1)). He also admitted several enhancement allegations, including that he had two prior strikes (§§ 667, subds. (b)-(i); 1170.12) and that the amount of cocaine involved exceeded one kilogram (Health & Saf. Code, § 11370.4, subd. (a)(1); hereafter sometimes "weight enhancement"). Defendant was sentenced as a third strike offender to 25 years to life in prison. At sentencing, the court struck the three-year punishment on the weight enhancement.

In November 2012, defendant filed a petition to recall his sentence, arguing that he was entitled to be resentenced under section 1170.126 because his offenses were not serious or violent felonies. The trial court found defendant ineligible for resentencing

2

under section 1170.126 because he had admitted the weight enhancement (Health & Saf. Code, § 11350.4).

On appeal, defendant argues that when the court struck the *punishment* on the weight enhancement, it also struck the enhancement itself, and that he is therefore entitled to have his sentence recalled. The Attorney General contends that the order denying defendant's petition to recall his sentence is not appealable and that the appeal should therefore be dismissed. On the merits, the Attorney General argues that since defendant admitted the weight enhancement, he is ineligible to have his sentence recalled. In his reply, defendant argues that the trial court's orders are appealable because they are post-judgment orders that affect his substantial rights. Alternatively, he asks this court to treat his appeal as a petition for writ of mandate and address the merits. As we shall explain, the Courts of Appeal have split on the question whether an order denying a section 1170.126 petition to recall a sentence on grounds that the prisoner is ineligible for relief is an appealable order and the California Supreme Court has granted review in four of five published cases that address the issue. We hold that, regardless of whether we find the orders appealable or treat defendant's appeal as a writ petition, the order is reviewable. On the merits, we conclude that defendant was ineligible for resentencing under section 1170.126 because he admitted the weight enhancement. We will therefore affirm the trial court's orders on the petition to recall defendant's sentence.

# FACTS[2]

We shall review defendant's criminal history, then describe his current offenses.

## Defendant's Criminal History and Strike Priors

Prior to his arrest in this case, defendant had an extensive criminal record, which included seven adjudications as a juvenile,[3] and ten prior convictions as an adult (eight felonies and two misdemeanors).

Both of defendant's strike priors were armed robberies. The first robbery occurred in August 1962, when defendant was 20 years old. Defendant and one or two others entered a market in San Francisco. Defendant drew a gun and demanded money from a clerk. When the clerk said the register was empty, defendant demanded money from two other persons in the store. Defendant was sentenced to five years to life in prison.

The second robbery occurred in February 1963 when defendant was 21 years old.[4] Defendant and a codefendant, both of whom were armed with handguns, held up a grocery store and stole $350. One of the robbers pistol-whipped the clerk "when he was too slow in getting the money," and shots were fired at another store employee "for no

---

[2] The facts are based on: (1) defendant's motion to strike his prior strike convictions pursuant to *People v. Superior Court* (*Romero*) (1996) 13 Cal.4th 497 (*Romero*); (2) the August 1996 report of a correctional consultant retained by defense counsel in support of defendant's *Romero* motion; (3) the prosecution's points and authorities in opposition to the *Romero* motion; (4) the probation report filed in December 1998; and (5) defendant's statement to the court at the sentencing hearing.

[3] The conduct that led to defendant's juvenile adjudications included disturbing the peace, violating curfew, hitting someone with a newsstand, and sexual assault of a 12-year-old girl. His last juvenile adjudication involved conduct that, if committed by an adult, would have constituted burglary (in which guns were stolen) and auto theft. The latter offenses resulted in a commitment to the California Youth Authority in 1957.

[4] The record does not explain why defendant was not incarcerated for the 1962 robbery at the time of the 1963 robbery.

4

apparent reason." Police officers responded "and shots were fired at the police." A "dangerous rooftop chase" followed; defendant was arrested on the roof of a nearby building. Defendant was sentenced in both robbery cases at the same time. He received five years to life in prison for the 1963 robbery, concurrent to his sentence for the 1962 robbery.

Defendant was granted parole in September 1966. In March 1968, defendant was convicted of petty theft and resisting arrest. He was sentenced to six months in jail for resisting arrest and received a 10-day suspended sentence for the petty theft.

In 1973, defendant was convicted in federal court of distributing 4.4 pounds of heroin and conspiracy to distribute heroin. He was sentenced to eight years in federal prison and paroled in August 1977.

In December 1979, defendant was arrested for distributing cocaine and conspiracy to distribute "multi-kilo quantities" of cocaine. He was convicted of both offenses in federal court and sentenced to 20 years in prison. In December 1979, defendant was also arrested for drunk driving and charged with being a felon in possession of a firearm. He was convicted of the firearm charge in federal court and sentenced to one year in federal prison consecutive to the 20 years for the drug offenses. In 1993, defendant was convicted of possessing cocaine in prison and sentenced to 18 months consecutive to his other sentences. Defendant was released from federal prison on October 10, 1994.

Initially, defendant was released to a halfway house in Oakland that was operated by the Federal Bureau of Prisons. In January 1995, defendant, who had been trained as a barber, got a job in a hair salon in San Francisco. He also enrolled in Hilltop Beauty School in Daly City to obtain additional training in cosmetology. On April 1, 1995, Defendant was released to community supervision and began living with his wife in Oakland.

5

*Defendant's Current Offenses*

Defendant knew his adult son, Maurice Tatum,[5] was a drug dealer. In 1995, Santa Clara police officers, who were working undercover with a confidential informant, arranged to sell Maurice a large quantity of cocaine.

On April 27, 1995, defendant met Maurice in San Francisco and learned that Maurice planned to pay someone to drive him to Santa Clara to complete the "drug buy." Defendant asked if he could drive Maurice there for the same amount of money and Maurice agreed. The record suggests defendant drove Maurice to a restaurant in Santa Clara in a 1992 silver Mazda.[6] Maurice's girlfriend, Sonja Simmons, told the police that she drove Maurice to Santa Clara in her 1995 green Ford Mustang and that defendant followed them in the Mazda. Simmons told the police that although she knew Maurice was a cocaine dealer, she did not know anything about the drug deal and was inside the restaurant when the transaction occurred.

When the informant and an undercover officer arrived, defendant and Maurice were waiting in the restaurant parking lot. Maurice was outside the vehicles; defendant was seated in the driver's seat of the silver Mazda. Maurice told the undercover officer where to park, then walked up to the silver Mazda. The officer saw defendant hand Maurice a shopping bag that contained $35,900[7] in cash. Maurice walked over to the undercover officer's vehicle and handed the officer the bag of cash; in exchange, the officer gave Maurice the cocaine. Maurice then walked up to the Mazda and the

---

[5] Since both defendant and his son have the same surname, to avoid confusion and meaning no disrespect, we shall hereafter refer to Maurice Tatum as "Maurice."

[6] Defendant told the probation officer he agreed to drive Maurice to San José; he told the sentencing judge he agreed to drive Maurice home after the deal was done.

[7] The prosecution and defense counsel told the court the shopping bag contained $35,900 in cash; the probation officer reported that the Tatums paid $37,295 for the cocaine.

Mustang, but did not get into either car. Police officers detained Maurice as he attempted to leave on foot; they detained defendant as he drove the silver Mazda out of the parking lot. The police recovered the cocaine from the green Mustang.

Years later, defendant told the probation officer that Maurice planned to have Simmons transport the cocaine from Santa Clara to Oakland, reasoning that if she were caught, she would not suffer major consequences since she did not have a criminal record. According to the probation report, the transcript of the preliminary hearing contained evidence that "defendant was in [a] motel room several weeks before the arrest" with Maurice, the informant, and undercover officers when they made arrangements for Maurice to buy the cocaine.

**PROCEDURAL HISTORY**

### Proceedings from 1995 Until 1998

Defendant was charged by information with one count of possession of cocaine for sale (Health & Saf. Code, § 11351) and one count of conspiracy to sell cocaine (§ 182, subd. (a)(1)). The information also contained the following enhancement allegations: (1) the amount of cocaine involved exceeded one kilogram (the weight enhancement; Health & Saf. Code, § 11370.4, subd. (a)(1)); (2) for the purpose of determining probation eligibility (§ 1203.073, subdivision (b)(1)), the amount of cocaine involved exceeded 28.5 grams; (3) defendant had two prior strike convictions within the meaning of the Three Strikes law (§§ 667, subds. (b)-(i); 1170.12); and (4) defendant had served two prior prison terms (§ 667.5, subd. (b)).

In April 1998, defendant made a *Romero* motion, in which he asked the court to strike one or both of his strike priors. The prosecution opposed the motion. The court denied the motion without prejudice in May 1998. On September 14, 1998, defendant pleaded guilty to both counts and admitted all of the enhancement allegations.

7

On December 18, 1998, after denying defendant's renewed *Romero* motion, the court sentenced defendant as a third strike offender to 25 years to life in prison on the possession of cocaine for sale count (Health & Saf. Code, § 11351) and 25 years to life concurrent on the conspiracy count (§ 182, subd. (a)(1)). The court struck the three-year punishment on the weight enhancement (Health & Saf. Code, § 11370.4, subd. (a)(1)) and the two-year punishment for the two prior prison term enhancements (§ 667.5, subd. (b)). The court made other orders that are not at issue in this appeal. Defendant did not appeal the judgment.

***Petition to Recall Defendant's Sentence (§ 1170.126)***

The Reform Act took effect on November 7, 2012. (Historical & Statutory Notes, 49 West's Ann. Pen. Code (2013 supp.) foll. § 1170.126, p. 36, quoting Prop. 36, § 10.)

On November 2, 2012 (four days before the election in which the voters approved Proposition 36), defendant filed a petition for recall of sentence pursuant to section 1170.126. The petition was a fill-in-the-blank form that tracked the language of section 1170.126; it included a waiver of defendant's personal appearance for resentencing as permitted by section 1170.126, subdivision (i).[8] Attached to the petition were copies of: (1) the abstract of judgment from 1998; (2) a letter regarding defendant's participation in the Jehovah's Witness Program at San Quentin; (3) certificates of participation regarding vocational, educational, and other rehabilitation programs defendant had completed in prison; and (4) documents regarding defendant's medical treatment in prison. Defendant

---

[8] Section 1170.126, subdivision (i) provides in part: "[A] defendant petitioning for resentencing may waive his or her appearance in court for the resentencing, provided that the accusatory pleading is not amended at the resentencing, and that no new trial or retrial of the individual will occur. The waiver shall be in writing and signed by the defendant."

was 70 years old when he filed his petition. Defendant, who represented himself, failed to serve a copy of the petition on the district attorney.

On November 21, 2012, the court issued an order denying the petition. The court found that although defendant's third strike convictions were "non-violent and non-serious" under section 1170.126, subdivision (b), he was "excluded from the group of persons subject to the remedial provisions of the [Reform] Act" because he had admitted the weight enhancement (Health & Saf. Code, § 11370.4).

Defendant subsequently retained counsel, who filed a written objection to the court's order. Defense counsel asked the court to vacate the order and set a hearing on defendant's petition to recall his sentence on the ground that neither the abstract of judgment nor the transcript of the sentencing hearing supported the court's finding that defendant had admitted the weight enhancement.

On December 26, 2012, the court issued an order on the objection. The court found that while the abstract of judgment did not reference the weight enhancement, a "review of the entire record" established that its omission was "merely a clerical error." The court noted that the minute order of the change of plea hearing, defendant's *Romero* motion, defendant's sentencing memorandum, and the transcript of the sentencing hearing all established that defendant had admitted the weight enhancement (Health & Saf. Code, § 11370.4). The court observed that the sentencing judge had stricken the punishment on the weight enhancement and that there was no record that defendant's admission of the enhancement had ever been set aside or stricken. The court held that "[b]ecause imposition of punishment for the allegation under § 11370.4 [(the weight enhancement)] does not affect eligibility under [section] 1170.126," defendant's objection was overruled. The court ordered the clerk to "prepare an amended abstract of judgment to correctly reflect the Court's order striking the punishment for the" weight enhancement and denied the petition. Defendant appeals.

9

*Appealability*

We begin by addressing the Attorney General's request that we dismiss the appeal on the ground that the order on defendant's petition to recall his sentence is not appealable. The Attorney General relies on *People v. Leggett* (2013) 219 Cal.App.4th 846, review granted December 18, 2013, S214264 (*Leggett*). "An appellate opinion is no longer considered published if the Supreme Court grants review [citation] and may not be relied on or cited [citation]" by a court or a party. (*People v. Kennedy* (2012) 209 Cal.App.4th 385, 400, citing Cal. Rules of Court, rules 8.1105(e)(1)), 8.1115(a).) The Court of Appeal filed *Leggett* on September 16, 2013, the same day the Attorney General filed her brief in this case. (*Leggett,* at p. 846.) Thus, review had not yet been granted in *Leggett* when the Attorney General filed her brief. Although we may not rely on *Leggett*, we note that it does not support the proposition for which it was cited by the Attorney General.

In his reply brief, citing *People v. Hurtado* (2013) 216 Cal.App.4th 941, review granted July 31, 2013, S212017 (*Hurtado*), defendant argues that an order denying a section 1170.126 petition to recall a sentence is appealable because it affects an inmate's substantial rights. He argues that by enacting section 1170.126, the electorate provided a statutory procedure whereby inmates serving an indeterminate life sentence could have a trial court consider whether they should be resentenced under the amended law and thereby "conferred a substantial right upon such inmates." Alternatively, citing *Teal v. Superior Court* (2103) 217 Cal.App.4th 308, review granted July 31, 2013, S211708 (*Teal*), defendant argues that this court "may construe this appeal as a petition for writ of mandate and proceed to the merits of the appeal."

As noted, review was granted in both *Teal* and *Hurtado* on July 31, 2013, more than four months before defendant filed his reply brief. However, defendant's reply brief

10

does not acknowledge the review-granted status of either case. It is well-established "that a grant of review by the Supreme Court nullifies the opinion," "causes it to no longer exist," and "removes its precedential value." (*Farmers Ins. Exchange v. Superior Court* (2013) 218 Cal.App.4th 96, 109-110.) Improper citation of a depublished opinion may cause the appellate court to return or strike the brief as defective and, in egregious cases, may lead to monetary sanctions. (Cal. Rules of Court, rule 8.276(a)(4); *Alicia T. v. County of Los Angeles* (1990) 222 Cal.App.3d 869, 885-886.) While the Attorney General's citation of *Leggett* is understandable because review had not yet been granted in *Leggett* when the Attorney General filed her brief, defendant's citation to and reliance on two review-granted cases (*Hurtado* and *Teal*) months after review was granted, without acknowledging the review-granted status of either case, is inexcusable.

As for the appealability of the trial court's orders denying defendant's petition to recall his sentence on the ground that he is ineligible for relief under section 1170.126, the Courts of Appeal have split on the issue and the California Supreme Court has granted review in four of the five published cases that address this question. Two Courts of Appeal have held that an order denying a petition to recall the defendant's sentence because the defendant is ineligible for relief under section 1170.126 is appealable. Two other courts have held that such orders are not appealable, but the appellate court may exercise its discretion to treat the appeal as a petition for writ of mandate or writ of habeas corpus and review the issue. One court has held that a trial court order denying a petition to recall a sentence based on a finding that the defendant is ineligible for resentencing because he was convicted of a serious or violent felony is not appealable but if the court denies the petition based on one of the eligibility factors in section 1170.126,

11

subdivisions (e)(2) or (e)(3), or the court exercises its discretion to deny resentencing on dangerousness grounds, the order is appealable.[9]

Instead of adding another voice to this appealability debate prior to any decision by the California Supreme Court, we conclude that the trial court's orders are reviewable, whether by appeal or writ petition, and proceed to the merits. (See *Leone v. Medical Board* (2000) 22 Cal.4th 660, 668 ["a reviewing court may exercise appellate jurisdiction—that is, the power to review and correct error in trial court orders and judgments—either by a direct appeal or by an extraordinary writ proceeding"].)

### *Defendant is Not Eligible for Resentencing*

As the court explained in *Yearwood*, a "prisoner is eligible for resentencing as a second strike offender if all of the following are shown: (1) the prisoner is serving an indeterminate life sentence for a crime that is not a serious or violent felony; (2) the life

---

[9] The four review-granted cases are: (1) *Hurtado*, *supra*, 216 Cal.App.4th at pp. 944-945 (Second District, Division 1; an order denying a section 1170.126 petition is appealable under section 1237, subd. (b) as an order after judgment affecting a party's substantial rights); (2) *Teal*, *supra*, 217 Cal.App.4th at pp. 310-312 (Second District, Division 7; order denying section 1170.126 petition is not appealable, but appellate court may treat the appeal "as a petition for writ of mandate or habeas corpus"); (3) *Leggett*, *supra*, 219 Cal.App.4th at pp. 850-854 (Third District; "an order denying relief under section 1170.126 is not appealable if it denies a petition that was erroneously filed by an individual whose . . . sentence is based on a conviction for any serious or violent felony. In all other instances, an order denying a petition for recall of sentence is appealable, whether based on a determination of ineligibility or an exercise of the trial court's discretion to deny resentencing"); and (4) *People v. Wortham* (2013) 220 Cal.App.4th 1018, review granted Jan. 15, 2104, S214844 (*Wortham*) (First District, Division 4; an order denying a section 1170.126 petition is appealable). The Supreme Court has designated *Teal* as the lead case and deferred briefing in *Hurtado, Leggett,* and *Wortham* pending its decision in *Teal*. Most recently, in *In re Martinez* (2014) 223 Cal.App.4th 610, 614, 615, petition for review pending, petition filed March 5, 2014, S216922, the Fourth District, Division 1, acknowledged this split of authority and exercised its discretion to treat the defendant's appeal as a writ of habeas corpus.

sentence was not imposed for any of the offenses appearing in sections 667, subdivision (e)(2)(C) and 1170.12, subdivision (c)(2)(C); and (3) the inmate has no prior convictions for any of the offenses appearing in clause (iv) of section 667, subdivision (e)(2)(C) or clause (iv) of section 1170.12, subdivision (c)(2)(C)." (*Yearwood*, *supra*, 213 Cal.App.4th at p. 170, citing § 1170.126, subd. (e).) If the prisoner satisfies these criteria, "the prisoner shall be resentenced as a second strike offender 'unless the court, in its discretion, determines that resentencing the petitioner would pose an unreasonable risk of danger to public safety.' (§ 1170.126, subd. (f).)" (*Yearwood*, at p. 170.)

It is undisputed that defendant's current offenses are "not defined as serious and/or violent felonies" and that he otherwise meets the eligibility requirements of subdivision (e)(1) of section 1170.126. The eligibility criterion in subdivision (e)(3) and the dangerousness finding under subdivision (f) of section 1170.126 are likewise not at issue in this case. The only eligibility criterion at issue is the second criterion set forth in subdivision (e)(2) of section 1170.126, which provides in relevant part: "An inmate is eligible for resentencing if: [¶] [¶] (2) The inmate's current sentence was not imposed for any of the offenses appearing in clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (e) of Section 667 or clauses (i) to (iii), inclusive, of subparagraph (C) of paragraph (2) of subdivision (c) of Section 1170.12." In other words, if defendant's third strike sentence was imposed for one of the offenses listed in section 667, subdivisions (e)(2)(C)(i)-(ii) or section 1170.12, subdivisions (c)(2)(C)(i)-(iii), he is ineligible for resentencing under section 1170.126.

Section 667, subdivision (e)(2)(C)(i) provides: "The current offense is a controlled substance charge, in which an allegation under Section 11370.4 . . . of the Health and Safety Code was admitted or found true." Since defendant's third strike conviction was a controlled substance charge (Health & Saf. Code, § 11351) for which he admitted the Health and Safety Code section 11370.4 weight enhancement, his offense is

13

one of the offenses listed in section 667, subdivision (e)(2)(C)(i). Thus, under the plain language of section 1170.126, subdivision (e)(2), he is ineligible for resentencing.

Defendant nonetheless argues that when the sentencing judge said, "I strike the punishment of that three year enhancement," she struck the weight enhancement itself (Health & Saf. Code, § 11370.4), not just the punishment on the enhancement. Defendant asserts: "The sentencing court's phrase that it is striking the 'punishment' for the enhancement does not create some nether-world type of stayed execution of the sentence otherwise mandated by the enhancement. Simply put, the enhancement is either stricken or it isn't." He argues that the legal effect of the sentencing judge's statement "was not to impose the . . . enhancement" and that the court's later finding, that the omission of the enhancement from the abstract was a clerical error, "is clearly erroneous." At oral argument, defense counsel argued that the trial court must either impose or strike the weight enhancement. He asserted that since the enhancement affects punishment, once the trial court struck the punishment on the weight enhancement, it also struck the enhancement.

When the trial court pronounced sentence, the court clearly stated that it was striking the "punishment" on the weight enhancement, not defendant's admission of the enhancement. Section 667, subdivision (e)(2)(C)(i) requires only that the enhancement be "admitted or found true"; it does not require that the court impose punishment on the admitted enhancement.

At the time of defendant's offenses, Health and Safety Code section 11370.4, subdivision (e) provided, as it does today, that "[n]otwithstanding any other provision of law, the court may strike the additional punishment for the enhancements provided in this section if it determines that there are circumstances in mitigation of the additional punishment and states on the record its reasons for striking the additional punishment." Thus, contrary to defendant's assertion, the very statute that provides for the weight

14

enhancement also authorizes the court to strike the "punishment" on the weight enhancement.

Citing *People v. Santana* (1986) 182 Cal.App.3d 185 (*Santana*), defendant argues that the " 'functional effect' " of the trial court's order striking the punishment on the weight enhancement was to strike the enhancement. The defendant in *Santana* was charged with residential burglary (§ 459). The information contained an enhancement allegation under former section 667, subdivision (a) that the defendant had previously been convicted of a serious felony. Former section 667, subdivision (a) provided for an additional term of five years upon proof of the enhancement allegation. The defendant pleaded guilty to the burglary charge and admitted the enhancement. (*Id.* at pp. 188-189.) At sentencing, the court imposed the six-year upper term for the burglary and "stayed" the "[t]ime" on the enhancement. (*Id.* at p. 189.) The People appealed, arguing that the trial court could not "use a prior serious felony conviction as an aggravating factor to impose an upper term and thus preclude imposing the additional five-year enhancement mandated by section 667." (*Ibid.*) The appellate court examined the differences between a stay and striking an allegation and held that when the functional effect of a trial court's order is to strike an enhancement, even though the court calls it a "stay," the court must comply with section 1385, which requires that a dismissal be in the furtherance of justice and that the court state its reasons for the dismissal in the minutes. (*Id.* at pp. 188, 190-192.) The court also held that the trial court abused its discretion when it used the prior serious felony conviction as a factor in aggravation of the sentence and that the court "must either impose the five-year enhancement or entirely strike the serious prior felony conviction." (*Id.* at p. 193.)

At oral argument, the Attorney General quoted from footnote 6 of *Santana* and argued that *Santana* (the case defendant relies on) actually supports the Attorney General's position. Just before the footnote, the *Santana* court stated that "striking is an unconditional deletion of the legal efficacy of the stricken allegation or fact for the

15

purposes of a specific proceeding. . . . It is tantamount to a dismissal." (*Santana*, *supra*, 182 Cal.App.3d at p. 190.) In footnote 6, however, the *Santana* court explained: " 'The striking or dismissal of a charge of prior conviction (regardless of whether it has or has not been admitted or established by evidence) is not the equivalent of a determination that defendant did not in fact suffer the conviction [citations]; such judicial action is taken, . . . "for the purpose of sentencing" only and "any dismissal of charges of prior convictions . . . does not wipe out such prior convictions or prevent them from being considered in connection with later convictions." ' [Citations.]" (*Id.* at p. 190, fn. 6.)

Defendant's reliance on *Santana* is misplaced. First, the trial court in this case did not attempt to *stay* the punishment on the enhancement; the court clearly stated it was *striking* the punishment on the weight enhancement, which it was authorized to do by Health and Safety Code section 11370.4, subdivision (e). Second, footnote 6 in *Santana* discussed the effect of striking an enhancement allegation or "charge," whereas in this case the court struck the punishment that flowed from the admission of the enhancement, not the charge (enhancement allegation) or defendant's admission of the allegation. Third, the nature of the enhancements in *Santana* and this case are different. *Santana* involved an enhancement for a prior conviction (§ 667, subd. (a)), whereas the weight enhancement here arises out of the facts of this case, not defendant's prior convictions. In *Santana*, the striking of the prior conviction allegation did not "wipe out prior convictions" or prevent them from being considered in connection with future convictions. (*Santana*, *supra*, 182 Cal.App.3d at p. 190, fn. 6.) This case does not involve use of the enhancement in connection with future prosecutions, but defendant's eligibility for resentencing in the very same case in which he was charged with and admitted the weight enhancement. Given these fundamental differences between the two cases, nothing in *Santana* alters our conclusion that defendant is ineligible for resentencing under the plain language of section 1170.126 and the Reform Act.

16

Defendant argues the trial court erred by failing to apply the rule of lenity when interpreting section 1170.126. "That rule generally requires that 'ambiguity in a criminal statute should be resolved in favor of lenity, giving the defendant the benefit of every reasonable doubt on questions of interpretation. But . . . "that rule applies 'only if two reasonable interpretations of the statute stand in relative equipoise.' " ' " (*In re M.M.* (2012) 54 Cal.4th 530, 545.) Defendant does not point to any ambiguity in section 1170.126 or develop any argument that supports the conclusion that section 1170.126 is subject to two reasonable interpretations that stand in relative equipoise.[10] As we have explained, the plain language of the statute supports the trial court's rulings. The rule of lenity does not apply here.

In light of our conclusions, we need not address defendant's contention that the trial court "erred by failing to apply the presumption that the Clerk regularly performed his or her duties and recorded the striking of the enhancement."

---

[10] At oral argument, defendant's counsel agreed that there is no ambiguity in section 1170.126.

## DISPOSITION

The orders denying defendant's petition to recall his sentence (§ 1170.126) are affirmed.

_____
Márquez, J.

WE CONCUR:

_____
Bamattre-Manoukian, Acting P. J.

_____
Grover, J.

18